## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BANK MIDWEST, a division of NBH Bank,

    Plaintiff,

v.

TIG QUESO LLC, QUESO TIME DE 1 LLC, QUESO TIME DE 2 LLC, QUESO TIME DE 3 LLC, QUESO TIME DE 4 LLC, QUESO TIME DE 5 LLC, QUESO TIME TPA1 LLC, QUESO TIME TPA2 LLC, QUESO TIME TPA3 LLC, QUESO TIME NJ 1 LLC, QUESO TIME NJ 10 LLC, QUESO TIME NJ 11 LLC, QUESO TIME NJ 12 LLC, QUESO TIME NJ 17 LLC, QUESO TIME NJ 2 LLC, QUESO TIME NJ 20 LLC, QUESO TIME NJ 3 LLC, QUESO TIME NJ 4 LLC, QUESO TIME NJ 5 LLC, QUESO TIME NJ 6 LLC, QUESO TIME NJ 9 LLC, QUESO TIME NJ 15 LLC, QUESO TIME NJ 18 LLC, QUESO TIME NJ 19 LLC, QUESO TIME NJ 21 LLC, QUESO TIME NJ 22 LLC, QUESO TIME NY 1 LLC, QUESO TIME NY 2 LLC, QUESO TIME NY 3 LLC, QUESO TIME NY 4 LLC, QUESO TIME PA 1 LLC, QUESO TIME PA 10 LLC, QUESO TIME PA 11 LLC, QUESO TIME PA 2 LLC, QUESO TIME PA 3 LLC, QUESO TIME PA 6 LLC, QUESO TIME PA 7 LLC, QUESO TIME PA 8 LLC, QUESO TIME PA 9 LLC, QUESO TIME PA 12 LLC, TIG QUESO NY LLC, TIG QUESO DE LLC, TIG QUESO NJ LLC, TIG QUESO PA LLC, and TIG QUESO FL LLC,

    Defendants.

Case No.    2:26-cv-5612

## VERIFIED COMPLAINT

Bank Midwest, a division of NBH Bank ("Plaintiff" or "Lender"), files this Complaint against TIG QUESO LLC, QUESO TIME DE 1 LLC, QUESO TIME DE 2 LLC, QUESO TIME

1

DE 3 LLC, QUESO TIME DE 4 LLC, QUESO TIME DE 5 LLC, QUESO TIME TPA1 LLC, QUESO TIME TPA2 LLC, QUESO TIME TPA3 LLC, QUESO TIME NJ 1 LLC, QUESO TIME NJ 10 LLC, QUESO TIME NJ 11 LLC, QUESO TIME NJ 12 LLC, QUESO TIME NJ 17 LLC, QUESO TIME NJ 2 LLC, QUESO TIME NJ 20 LLC, QUESO TIME NJ 3 LLC, QUESO TIME NJ 4 LLC, QUESO TIME NJ 5 LLC, QUESO TIME NJ 6 LLC, QUESO TIME NJ 9 LLC, QUESO TIME NJ 15 LLC, QUESO TIME NJ 18 LLC, QUESO TIME NJ 19 LLC, QUESO TIME NJ 21 LLC, QUESO TIME NJ 22 LLC, QUESO TIME NY 1 LLC, QUESO TIME NY 2 LLC, QUESO TIME NY 3 LLC, QUESO TIME NY 4 LLC, QUESO TIME PA 1 LLC, QUESO TIME PA 10 LLC, QUESO TIME PA 11 LLC, QUESO TIME PA 2 LLC, QUESO TIME PA 3 LLC, QUESO TIME PA 6 LLC, QUESO TIME PA 7 LLC, QUESO TIME PA 8 LLC, QUESO TIME PA 9 LLC, QUESO TIME PA 12 LLC, TIG QUESO NY LLC, TIG QUESO DE LLC, TIG QUESO NJ LLC, TIG QUESO PA LLC, TIG QUESO FL LLC (collectively, "Queso Borrower" or "Defendants"), showing the Court as follows:

## INTRODUCTION

Queso Borrower is the owner and operator of 41 Qdoba locations in Pennsylvania, New Jersey, New York, Delaware and Florida. In April 2025, Queso Borrower obtained $20 million in loans from Plaintiff, secured by all of Queso Borrower's assets, including their Qdoba locations, and guaranteed by Manisha Patel.

Unbeknownst to Plaintiff, just three (3) months following the loans to Queso Borrower, Queso Borrower ran into trouble with the franchisor, Qdoba Franchisor LLC ("Qdoba Franchisor"). Also unbeknownst to Plaintiff, Queso Borrower failed to pay $1,053,885.50 in royalty fees, National Marketing Fund fees and rent to Qdoba Franchisor. Thereafter, again without informing Plaintiff, Queso Borrower entered into a workout agreement with Qdoba

2

Franchisor agreeing to the termination of the franchise agreements between Qdoba Franchisor and Queso Borrower, thereby agreeing to effectively destroy all value of Plaintiff's collateral.  During this same period, Queso Borrower failed to pay sales taxes, with over $1 million in past due sales taxes now owed.  All the while, Queso Borrower has failed to provide financial statements and other information to Plaintiff as and when due under the loan documents, further disguising Queso Borrower's liquidity problems from Plaintiff.

Further, on August 4, 2026, Lender learned that approximately $300,000 was diverted from Queso Borrower's bank account(s) to unknown transferees for unknown purposes.  At the same time, notwithstanding a lack of sufficient funds in its bank account, Queso Borrower is writing payroll checks on August 3 and 4, 2026, and hoping that sufficient funds are received from receivables before employees attempt to cash the checks.  Further, Queso Borrower is not paying rent as and when due, is not paying debt service, is not paying royalty and marketing fees, and accounts payables continues to accrue.

Queso Borrower is in default under its loan documents.  Queso Borrower agreed that, in the event of a default, Plaintiff is entitled to the appointment of a receiver. Accordingly, and as set forth in more detail below, Plaintiff seeks repayment of the amounts owed by Defendants under the respective loan documents and the appointment of a receiver over Queso Borrower and all of its businesses and assets wherever located.  Absent the immediate appointment of a receiver with the power to manage and operate Queso Borrower's assets and business and to sell its assets, Plaintiff's collateral is at immediate risk and will likely continue to deteriorate.  A receiver is necessary to ensure that revenues of Plaintiff's collateral are being properly used to operate, preserve and protect Plaintiff's collateral and to sell Plaintiff's collateral.  A receiver is further warranted and necessary to oversee Queso Borrower's operations and ensure that continuity of

Queso Borrower's operations through the completion of a sale of Queso Borrower's assets, which sale is currently contemplated and under negotiation by Queso Borrower. Absent immediate appointment of a receiver, the restaurants may close, franchisor(s) may terminate franchise agreements and all of Lender's collateral value will dissipate. Queso Borrower agreed that under these precise circumstances Plaintiff is entitled to a receiver. For the reasons set forth below, Plaintiff requests that the Court immediately appoint a receiver and enter judgment in favor of Plaintiff against Defendants in the amounts owed under the loan documents.

### Parties, Jurisdiction and Venue

1. Plaintiff is a division of NBH Bank, a Colorado corporation with its principal place of business at 7800 E Orchard Road, Suite 300, Greenwood Village, Colorado.

2. TIG QUESO LLC is a Delaware limited liability company. TIG QUESO LLC may be served with process by serving its registered agent, Manisha Patel, at 416 S Ridge Ave, Middletown Delaware.

3. QUESO TIME DE 1 LLC is a Delaware limited liability company. QUESO TIME DE 1 LLC may be served with process by serving its registered agent, Raj Maha Devia, at 416 S Ridge Ave, Middletown, Delaware 19709.

4. QUESO TIME DE 2 LLC is a Delaware limited liability company. QUESO TIME DE 2 LLC may be served with process by serving its registered agent, Raj Maha Devia, at 416 S Ridge Ave, Middletown, Delaware 19709.

5. QUESO TIME DE 3 LLC is a Delaware limited liability company. QUESO TIME DE 3 LLC may be served with process by serving its registered agent, Raj Maha Devia, at 416 S Ridge Ave, Middletown, Delaware 19709.

6.      QUESO TIME DE 4 LLC is a Delaware limited liability company. QUESO TIME DE 4 LLC may be served with process by serving its registered agent, Raj Maha Devia, at 416 S Ridge Ave, Middletown, Delaware 19709.

7.      QUESO TIME DE 5 LCC is a Delaware limited liability company. QUESO TIME DE 5 LCC may be served with process by serving its registered agent, Raj Maha Devia, at 416 S Ridge Ave, Middletown, Delaware 19709.

8.      QUESO TIME TPA1 LLC is a Florida limited liability company. QUESO TIME TPA1 LLC may be served with process by serving its registered agent, Manisha Patel, at 2550 S Falkenburg Road, Tampa, Florida 33619.

9.      QUESO TIME TPA2 LLC is a Florida limited liability company. QUESO TIME TPA2 LLC may be served with process by serving its registered agent, Manisha Patel, at 11335 Canopy Loop, Fort Myers, Florida 33913.

10.      QUESO TIME TPA3 LLC is a Florida limited liability company. QUESO TIME TPA3 LLC may be served with process by serving its registered agent, Manisha Patel, at 11335 Canopy Loop, Fort Myers, Florida 33913.

11.      QUESO TIME NJ 1 LLC is a New Jersey limited liability company. QUESO TIME NJ 1 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

12.      QUESO TIME NJ 10 LLC is a New Jersey limited liability company. QUESO TIME NJ 10 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

5

13.     QUESO TIME NJ 11 LLC is a New Jersey limited liability company. QUESO TIME NJ 11 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

14.     QUESO TIME NJ 12 LLC is a New Jersey limited liability company. QUESO TIME NJ 12 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

15.     QUESO TIME NJ 17 LLC is a New Jersey limited liability company. QUESO TIME NJ 17 LLC may be served with process by serving its registered agent, Manisha Patel, at 393 N State Rt 17, Paramus, New Jersey 07652.

16.     QUESO TIME NJ 2 LLC is a New Jersey limited liability company. QUESO TIME NJ 2 LLC may be served with process by serving its registered agent, Manisha Patel, at 55 Rockafeller Rd Ste 10, Piscataway, New Jersey 08854.

17.     QUESO TIME NJ 20 LLC is a New Jersey limited liability company. QUESO TIME NJ 20 LLC may be served with process by serving its registered agent, Manisha Patel, at 604 Bartholomew Road, Piscataway, New Jersey 08854.

18.     QUESO TIME NJ 3 LLC is a New Jersey limited liability company. QUESO TIME NJ 3 LLC may be served with process by serving its registered agent, Manisha Patel, at 2924 770 US Route 1 N, Iselin, New Jersey 08830.

19.     QUESO TIME NJ 4 LLC is a New Jersey limited liability company. QUESO TIME NJ 4 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

6

20.     QUESO TIME NJ 5 LLC is a New Jersey limited liability company. QUESO TIME NJ 5 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

21.     QUESO TIME NJ 6 LLC is a New Jersey limited liability company. QUESO TIME NJ 6 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

22.     QUESO TIME NJ 9 LLC is a New Jersey limited liability company. QUESO TIME NJ 9 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

23.     QUESO TIME NJ 15 LLC is a New Jersey limited liability company. QUESO TIME NJ 15 LLC may be served with process by serving its registered agent, Manisha Patel, at 1951 E Edgar Rd, Linden, New Jersey 07036.

24.     QUESO TIME NJ 18 LLC is a New Jersey limited liability company. QUESO TIME NJ 18 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

25.     QUESO TIME NJ 19 LLC is a New Jersey limited liability company. QUESO TIME NJ 19 LLC may be served with process by serving its registered agent, Manisha Patel, at 561 US Highway 1 Ste E7, Edison, New Jersey 08817.

26.     QUESO TIME NJ 21 LLC is a New Jersey limited liability company. QUESO TIME NJ 21 LLC may be served with process by serving its registered agent, Manisha Patel, at 1070 White Horse Ave, Trenton, New Jersey 08610.

27.     QUESO TIME NJ 22 LLC is a New Jersey limited liability company. QUESO TIME NJ 22 LLC may be served with process by serving its registered agent, Manisha Patel, at 3542 Broidy Road, McGuire AFB, New Jersey 08641.

28.     QUESO TIME NY 1 LLC is a New York limited liability company. QUESO TIME NY 1 LLC may be served with process by serving its registered agent, Manisha Patel, at 2335 Richmond Avenue, Staten Island, New York 10314.

29.     QUESO TIME NY 2 LLC is a New York limited liability company. QUESO TIME NY 2 LLC may be served with process by serving its registered agent, Manisha Patel, at 7001 Amboy Road, Unit 106, Staten Island, New York 10307.

30.     QUESO TIME NY 3 LLC is a New York limited liability company. QUESO TIME NY 3 LLC may be served with process by serving its registered agent, Manisha Patel, at 1275 Woodrow Road, Staten Island, New York 10309.

31.     QUESO TIME NY 4 LLC is a New York limited liability company. QUESO TIME NY 4 LLC may be served with process by serving its registered agent, Manisha Patel, at 2750-A Hylan Blvd, Staten Island, New York 10306.

32.     QUESO TIME PA 1 LLC is a Pennsylvania limited liability company. QUESO TIME PA 1 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

33.     QUESO TIME PA 10 LLC is a Pennsylvania limited liability company. QUESO TIME PA 10 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

34.     QUESO TIME PA 11 LLC is a Pennsylvania limited liability company. QUESO TIME PA 10 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

35.     QUESO TIME PA 2 LLC is a Pennsylvania limited liability company. QUESO TIME PA 2 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

36.     QUESO TIME PA 3 LLC is a Pennsylvania limited liability company. QUESO TIME PA 3 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

37.     QUESO TIME PA 6 LLC is a Pennsylvania limited liability company. QUESO TIME PA 6 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

38.     QUESO TIME PA 7 LLC is a Pennsylvania limited liability company. QUESO TIME PA 7 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

39.      QUESO TIME PA 8 LLC is a Pennsylvania limited liability company. QUESO TIME PA 8 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

40.     QUESO TIME PA 9 LLC is a Pennsylvania limited liability company. QUESO TIME PA 9 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

41.     QUESO TIME PA 12 LLC is a Pennsylvania limited liability company QUESO TIME PA 12 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

42.     TIG QUESO NY LLC is a Delaware limited liability company. TIG QUESO LLC may be served with process by serving its registered agent, Manisha Patel

43.     TIG QUESO DE LLC is a Delaware limited liability company. TIG QUESO DE LLC may be served with process by serving its registered agent, Manisha Patel, at 211 S Main Street, Suite 101, Newark, Delaware 19711.

44.     TIG QUESO NJ LLC is a Delaware limited liability company. TIG QUESO NJ LLC may be served with process by serving its registered agent, Manisha Patel, at 416 S Ridge Ave., Middletown, Delaware 19709.

45.     TIG QUESO PA LLC is a Delaware limited liability company. TIG QUESO PA LLC may be served with process by serving its registered agent, Manisha Patel, at 416 S Ridge Ave., Middletown, Delaware 19709.

46.     TIG QUESO FL LLC is a Delaware limited liability company. TIG QUESO FL LLC may be served with process by serving its registered agent, Manisha Patel, at

47.     In the Queso Loan Agreement (defined below), Queso Borrower agreed to accept service by mail to Manisha Patel, at 416 S Ridge Ave, Middletown, Delaware 19709 with a copy to Albert M. Belmont, III, Bochetto & Lentz, P.C., 1524 Locust Street, Philadelphia, Pennsylvania 19102. (Queso Loan Agreement, § 8.12.)

48.     In the Queso Loan Agreement, Queso Borrower agreed to the jurisdiction and venue of this Court. Specifically, Queso Borrower agreed that "nothing in this Agreement shall limit or restrict Lender's right to commence any proceeding in the federal or state courts located

in the state in which a particular Site is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under any Loan Document." (Queso Loan Agreement, § 8.12.)

49.     Queso Borrower further "irrevocably waive[d] any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions." (Queso Loan Agreement, § 8.12.)

50.     A Queso Borrower site is located at 2669 Macarthur Road, Whitehall, Pennsylvania.

51.     Accordingly, Defendants agreed to jurisdiction and venue in this Court.

52.     Additionally, pursuant to 28 U.S.C. § 1332, Defendants are subject to the jurisdiction and venue of this Court because Defendants are not citizens of any State of which Plaintiff is a citizen such that there is complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Each entity comprising Queso Borrower are owned by Manisha Patel and Jiger Patel, both of whom are domiciled in Pennsylvania. Plaintiff is domiciled in Colorado.

53.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court.

## STATEMENT OF RELEVANT FACTS

### The Queso Loan Documents

54.     In April 2025, Plaintiff made a loan to Queso Borrower in the original principal amount of $10,000,000.00 (the "Queso Term Loan") evidenced by that certain Term Loan A Note dated April 14, 2025 (as amended and/or modified, the "Queso Term Note") executed by Queso

11

Borrower in favor of Plaintiff. A true and correct copy of the Queso Term Note is attached hereto as **Exhibit A**.

55.     Also in April 2025, Plaintiff made a loan to Queso Borrower in the original principal amount of $10,000,000.00 (the "Queso DLOC Loan") evidenced by that certain DLOC A Note dated April 14, 2025 (as amended and/or modified, the "Queso DLOC Note", together with the Queso Term Note, the "Queso Notes") executed by Queso Borrower in favor of Plaintiff. A true and correct copy of the Queso DLOC Note is attached hereto as **Exhibit B**.

56.     On or about April 14, 2025, Queso Borrower and Plaintiff executed that certain Loan Agreement (the "Queso Loan Agreement"). A true and correct copy of the Queso Loan Agreement is attached hereto as **Exhibit C**.

57.     On or about April 14, 2025, Queso Borrower executed that certain Security Agreement (the "Queso Security Agreement") in favor Plaintiff and granted Plaintiff a first-priority security interest in all of Queso Borrower's assets. A true and correct copy of the Queso Security Agreement is attached hereto as **Exhibit D**.

58.     On or about April 14, 2025, Manisha Patel ("Guarantor") executed that certain Guaranty in favor of Plaintiff (the "Queso Guaranty"), guarantying all amounts owed by Queso Borrower to Lender. A true and correct copy of the Queso Guaranty is attached hereto as **Exhibit E**.

59.     On or about November 13, 2025, Queso Borrower, Guarantor and Lender executed that certain Loan Assumption and First Modification Agreement (the "Queso Modification Agreement", together with the Queso Term Note, Queso DLOC Note, Queso Loan Agreement, Queso Security Agreement and Queso Guaranty, together with all documents executed in

connection therewith and/or related thereto are collectively, the "Queso Loan Documents"). A true and correct copy of the Queso Modification Agreement is attached hereto as **Exhibit F**.

<u>**The Defaults Under the Queso Loan Documents**</u>

60.    Pursuant to Section 5.6 of the Queso Loan Agreement, Queso Borrower agreed that no Credit Party (as defined in the Queso Loan Agreement) shall agree to any amendment of the Franchise Agreement (as defined in the Queso Loan Agreement) that could reasonably be expected to adversely affect the rights, privileges and remedies of Lender and agreed to provide Lender a copy of any amendments to the Franchise Agreement promptly following execution. (Queso Loan Agreement, § 5.6.)

61.    Pursuant to Section 6.1(c) of the Queso Loan Agreement, a violation of any provision of Article 5 of the Loan Agreement is an Event of Default.

62.    Pursuant to the Queso Loan Agreement, Queso Borrower is required to do the following:

a.    comply with and perform all of its obligations under each Franchise Agreement, and give Lender prompt written notice of the occurrence of any default by any Credit Party under such Franchise Agreement and of any notice of default given to any Credit Party by Franchisor (Queso Loan Agreement, § 4.7);

b.    keep each Franchise Agreement in full force and effect such that each Franchise Agreement will not expire prior to the Credit Facilities Maturity Date (Queso Loan Agreement, § 4.7);

c.    for each Leased Site, Borrower will timely comply with and perform all of lessee's obligations under each Lease, and will give Lender prompt written notice of the

13

occurrence of any default by Borrower and of any notice of default given to any Credit Party by Lessor (Queso Loan Agreement, § 4.8);

d.  Borrower shall at all times occupy each Site and diligently operate its business at each Site as the Permitted Concept (Queso Loan Agreement, § 4.9);

e.  within 45 days after the end of each Fiscal Quarter of Borrower, Borrower shall deliver to Lender complete Financial Statements for the Fiscal Quarter then ended (Queso Loan Agreement, § 4.15(a)(i));

f.  within 45 days after the end of each Fiscal Quarter of Borrower, Borrower shall deliver to Lender bank and brokerage statements evidencing liquidity of Guarantor for the Fiscal Quarter then ended (Queso Loan Agreement, § 4.15(a)(ii));

g.  within 120 days after the end of each Fiscal Year of Borrower, Borrower shall deliver to Lender complete Financial Statements for Borrower for the Fiscal Year then ended (Queso Loan Agreement, § 4.15(b)(i));

h.  within 45 days after the end of each Fiscal Year of Borrower, Borrower shall deliver to Lender complete Financial Statements for Guarantor for the Fiscal Year then ended (Queso Loan Agreement, § 4.15(b)(ii));

i.  within 15 days following Lender's written request, Borrower shall deliver to Lender such additional Financial Statements and information (financial or otherwise) as Lender may reasonably request (Queso Loan Agreement, § 4.15(e));

j.  give prompt written notice to Lender of any action, event or condition of any nature that could reasonably be expected to have a Material Adverse Effect, or which, with notice or lapse of time or both, would constitute an event of default or default under

any other instrument or agreement to which Borrower is a party (Queso Loan Agreement, § 4.17); and

k. no Credit Party shall, without the prior written consent of Lender, enter into any agreement to sell, assignment transfer or otherwise encumber or dispose of the Collateral to any Person (Queso Loan Agreement, § 5.8).

63.    Under the Queso Loan Agreement, an Event of Default occurs when, among other things, any Credit Party fails to observe any of the covenants or obligations of the Queso Loan Agreement or any of the other Queso Loan Documents. (Queso Loan Agreement, § 6.1(c).)

64.    On or about February 20, 2026, Qdoba Franchisor issued a notice of default and termination to Queso Borrower.  Queso Borrower failed to timely cure their defaults (to the extent they were entitled to cure).

65.    On or about March 12, 2026, Queso Borrower and Qdoba Franchisor executed that certain Workout Letter (the "Qdoba Workout Letter") wherein Queso Borrower acknowledged and agreed that Queso Borrower owed Qdoba Franchisor $1,053,885.50 in past due royalty fees (covering the period beginning with at least October 2025), past due National Marketing Fund fees, and past due rent.  Queso Borrower also agreed to sell its interests in the Qdoba restaurants operated by Queso Borrower and acknowledged that Qdoba Franchisor is entitled to terminate the Franchise Agreements as a result of Queso Borrower's defaults.

66.    Events of Default occurred under the Loan Agreement because, among other things (collectively, the "Queso Covenant Defaults"):

a. Borrower failed to timely comply with and perform all of its obligations under each Franchise Agreement, as evidenced by the Qdoba Workout Letter, and because

15

Borrower failed to make payments as and when due to Franchisor, including royalty, marketing, technology and rent payments due to Franchisor;

b.  Borrower failed to keep each Franchise Agreement in full force and effect;

c.  Borrower failed to timely comply with and perform all obligations under each Lease, and failed to provide Lender with prompt written notice of the occurrence of defaults under Leases;

d.  Borrower failed to occupy each Site and diligently operate its business at each Site as a Permitted Concept, as Borrower closed Store 2693 in Collegeville, Pennsylvania without Lender's prior written consent;

e.  Borrower failed to provide to Lender copies of Borrower's Financial Statements for Fiscal Year 2025, which are to be audited;

f.  Borrower failed to provide to Lender complete bank and brokerage statements evidencing Guarantor's liquidity; and

g.  Borrower entered into one or more agreements to sell or otherwise dispose of the Collateral without Lender's prior written consent.

67.     Under the Queso Notes, Queso Borrower is obligated to make monthly interest payments on or before the first day of each month. (Queso Term Note, § 2(a); Queso DLOC Note, § 5(b).)

68.     The Queso Loan Agreement further provides that an Event of Default occurs if "any Obligation for the payment of money is not paid (i) in the case of any scheduled monthly payments due under the Notes or any other regularly scheduled payments under the Loan Documents, within 10 days of the due date therefore (the 'Outside Payment Date')[.]" (Queso Loan Agreement, § 6.1(a).)

69.     An Event of Default occurred under the Queso Loan Documents because Queso Borrower failed to pay the interest payment due July 1, 2026 (the "Queso Payment Default", together with the Queso Franchise Default and Queso Covenant Defaults, the "Queso Defaults").

70.     On July 2, 2026, Lender notified Queso Borrower and Guarantor of the Queso Franchise Default and provided Queso Borrower and Guarantor an opportunity to cure the Queso Covenant Defaults. A true and correct copy of the July 2, 2026 letter is attached hereto as **Exhibit G**.

71.     On July 10, 2026, Lender notified Queso Borrower and Guarantor of the Queso Defaults and demanded payment of all amounts that were due on July 1, 2026. A true and correct copy of the July 10, 2026 letter is attached hereto as **Exhibit H**.

72.     On July 22, 2026, Lender again notified Queso Borrower and Guarantor of the Queso Defaults and that the indebtedness owed under the Queso Notes and Queso Loan Documents was accelerated. (The July 2, 2026, July 10, 2026 and July 22, 2026 letters from Lender the Queso Borrower and Guarantor are referred to collectively as the "Queso Letters.") A true and correct copy of the July 22, 2026 letter is attached hereto as **Exhibit I**.

73.     Notwithstanding receipt of the Queso Letters, Queso Borrower and Guarantor failed to pay the amounts owed under the Queso Loan Documents or otherwise cure the Queso Defaults.

74.     As of July 22, 2026, an amount not less than $18,318,768.44, consisting of principal in the amount of $18,073,388.09, unpaid accrued (non-default) interest in the amount of $170,145.80, unused line fee of $100.45, and late fees of $75,134.10, is owed under the Queso Loan Documents. Interest and attorneys' fees and expenses continue to accrue.

17

**Basis to Appoint a Receiver Over Queso Borrower**

75.   Compelling grounds exist for the immediate appointment of a receiver over Queso Borrower.

76.   The Queso Events of Default are ongoing and have not been cured.

77.   In the Queso Security Agreement, Queso Borrower agreed to the appointment of a receiver in precisely this scenario. Specifically, Queso Borrower agreed as follows:

> If an Event of Default shall have occurred and be continuing and in additional to any other rights and remedies, as matter of right and without notice to Debtor or anyone claiming under Debtor, and without regard to the then value of the UCC Collateral or the interest of Debtor therein, or the solvency of Debtor or the occurrence of any Event of Default described in Section 6.1(f) of the [Queso] Loan Agreement, lender may seek the appointment of a receiver for Debtor and/or any of the other Credit Parties and/or the UCC Collateral and, to the maximum extent permitted by law, for all other assets of Debtor and such other Credit Parties. Debtor and each other Credit Party waives any right to a hearing or notice of hearing prior to the appointment of a receiver and irrevocably consents to such appointment. Such receiver shall have all of the usual powers and duties of receivers in like or similar cases and all of the powers and duties of Lender in case of entry as provided above and shall continue as such and exercise all such powers until the later of the date of confirmation of sale of the UCC Collateral or the date of expiration of any redemption period, unless such receivership is sooner terminated. All expenses incurred by the receiver or its agents, including obligations to repay funds borrowed by the receiver, shall constitute a part of the Obligations. Any revenues collected by the receiver shall be applied first to the expenses of the receivership, including reasonable attorneys' fees incurred by the receiver and Lender, together with interest thereon at the Default Rate from the date incurred until paid, and the balance shall be applied toward the Obligations or in such other manner as the court may direct.

(Queso Security Agreement, § 8.)

78.   The Queso Defaults are ongoing.

18

79. Queso Borrower's principal, Jiger Patel, is responsible for ensuring Queso Borrower complies with its obligations under the Queso Loan Documents and communicating with Lender.

80. Under Mr. Patel's leadership, Lender has not received adequate or timely reporting, resulting in a complete lack of transparency as to the status of its collateral.

81. Lender made the Queso Term Loan and Queso DLOC Loan in April of 2025, and unbeknownst to Lender, by as early as July of 2025, Queso Borrower was no longer in good standing with Qdoba Franchisor.

82. Queso Borrower did not inform Lender until July 2026, a year later, that it was not in good standing with Qdoba Franchisor.

83. On or about February 20, 2026, Qdoba Franchisor issued a notice of default and termination to Queso Borrower.  Queso Borrower failed to timely cure their defaults (to the extent they were entitled to cure).   Queso Borrower also failed to inform Lender of Queso Borrower's receipt of the default and termination letter from Qdoba Franchisor.

84. On or about March 12, 2026, Queso Borrower and Qdoba Franchisor executed that certain Workout Letter (the "Qdoba Workout Letter") wherein Queso Borrower acknowledged and agreed that Queso Borrower owed Qdoba Franchisor $1,053,885.50 in past due royalty fees (covering the period beginning with at least October 2025), past due National Marketing Fund fees, and past due rent.  Queso Borrower also agreed to sell its interests in the Qdoba restaurants operated by Queso Borrower and acknowledged that Qdoba Franchisor is entitled to terminate the Franchise Agreements as a result of Queso Borrower's defaults.

85. In the Workout Letter, Queso Borrower acknowledged that it owed over $1 million in past due royalties, marketing fees and rent to Qdoba Franchisor and agreed to pay that amount

19

in three installment payments between March 20, 2026 and April 22, 2026. Queso Borrower also agreed to an April 22, 2026 termination date of the franchise agreements under which Lender's collateral was operating and to sell all of Queso Borrower's Qdoba restaurants.

86.     Queso Borrower did not inform Lender of the Workout Letter or the consequences thereof or provide Lender with a copy of the Workout Letter until July 2026 and after Lender's written demand.

87.     Around the same time that Queso Borrower failed to pay amounts owed to Qdoba Franchisor and entered into the Workout Letter, Queso Borrower stopped and/or failed to pay sales taxes.  Currently, Queso Borrower owes over $1 million in unpaid sales taxes.

88.     Only when Lender became generally aware of an amendment to the franchise agreements between Queso Borrower and Qdoba Franchisor and made repeated requests to Queso Borrower and Mr. Patel for more information did Queso Borrower provide a copy of the Workout Letter to Plaintiff.

89.     Even more troubling, the financial information that was provided to Lender did not indicate that Queso Borrower's business operations were distressed or that Queso Borrower had a serious liquidity problem.

90.     Though the Queso Loan Agreement required Queso Borrower to provide regular reporting and to respond to reasonable requests from Lender within fifteen (15) days, Mr. Patel did not maintain Queso Borrower's books and records in such a manner that accurate information could timely be provided to Lender.

91.     Mr. Patel also negotiated two letters of intent with the same purchaser, one for the sale of eighteen (18) stores securing the indebtedness owed to Lender, and the other for sale of one (1) store securing indebtedness owed to another lender. Confoundingly, the purchase price for the

single store is five times greater than the purchase price for the 18 stores, leaving a significant deficiency owed to Lender and showing clear favoritism by Mr. Patel of the other lender.

92.    Queso Borrower is pursuing a sale of its assets, but it is unclear what diligence has been provided to the purchasers. If purchasers do not timely receive due diligence information, the sale of Lender's collateral will be put in serious jeopardy.

93.    In addition to its failure to comply with its obligations to Lender, Queso Borrower is not paying other obligations as and when due, including over $1,000,000 in unpaid sales taxes, over $1,000,000 (and climbing each week) in royalty, advertising, rent and other fees owed to Qdoba franchisor, rent to third-party landlords, over $300,000 owed to Door Dash, with over $3.6 million in accounts payable owed.

94.    Further, notwithstanding Queso Borrower's recent engagement of a chief restructuring officer (the "CRO"), the CRO does not have treasury management control, does not have full visibility into or control over Queso Borrower's operations and remains reliant on Queso Borrower's existing management, including Mr. Patel, for information and documents such that Lender continues to not receive timely information. For example, Lender does not receive updated cash flow statements or budget-to-actual reporting. Mr. Patel continues to control all aspects of Queso Borrower, including finances and negotiations with potential buyers.

95.    Even with the CRO in place, Lender still lacks any real visibility into Queso Borrower's financial position.

96.    Further, Queso Borrower recently moved to paying payroll via check versus payment by direct deposit, presumably to add more of a buffer to collect sufficient revenues to pay the amounts owed before the checks are cashed, thereby jeopardizing Queso Borrower's continued employment of managers and other staff at the restaurant.

21

97.     Even more concerning, Queso Borrower, apparently consultation with the CRO, is now issuing payroll checks without sufficient funds in its bank accounts to cover those checks. It is unclear how, given Queso Borrower's liquidity position, it is covering payroll obligations, rent, food and other critical operating expenses. Queso Borrower is apparently writing checks for the payroll obligations, and hoping that sufficient deposits are received before the checks clear. Failure to make payroll will put Queso Borrower's operations (and Lender's collateral) at severe risk of imminent harm, as employees are not likely to return to work if they do not timely receive the amounts owed to them. Similarly, failure to pay food vendors puts Lender's collateral at risk.

98.     Lender also recently became aware that, over the last several weeks, while Queso Borrower's business has been in a state of distress, Queso Borrower, diverted approximately $300,000 from its bank account(s), which funds were transferred to unknown transferees for unknown purposes. This money could have been used to fund payroll or other operating expenses. Lender requested that Mr. Patel and the CRO provide an explanation of the missing funds, but has yet to receive a response.

99.     In addition to payroll obligations, Queso Borrower is not complying with its obligations to Qdoba Franchisor and owes approximately $432,000 for August rent, including rent owed to Qdoba Franchisor, and, upon information and belief, does not have sufficient funds to pay rent and certain stores have reduced their hours.

100.     Notwithstanding the foregoing, on July 31, 2026, Lender offered to provide $850,000 of emergency funding to ensure that payroll, rent and other operating expenses were timely paid. But Queso Borrower has been slow to respond to information requests from Lender in connection with the financing and has not signed the documents necessary to enable the funding. Lender is no longer willing to advance funds to Queso Borrower without the oversight of a receiver

22

to ensure that the funds are appropriately used to maintain Queso Borrower as a going concern until its assets can be sold.

101.    Lender continues to make requests to Queso Borrower for information regarding Queso Borrower's operations, liquidity and financial status, which information should be readily available. Many of these requests go unanswered or Queso Borrower provides only partial responses.

102.    Given the foregoing, the appointment of a receiver over Queso Borrower, its businesses and all of its assets, wherever located, is necessary to preserve and protect the collateral and to sell the collateral in an orderly and professional manner that maximizes the value of the collateral. It is Lender's understanding that Qdoba Franchisor is supportive of the appointment of a receiver.

## COUNT I
## SUIT ON NOTE – QUESO NOTES
### (Against Queso Borrower)

103.    The allegations contained in paragraphs 1 through 102 are incorporated by reference as if fully set forth herein.

104.    Queso Borrower is in default under the Queso Notes and Queso Loan Documents.

105.    Despite proper demand being made on Queso Borrower for payments of the amounts owed under the Queso Notes and Queso Loan Documents, Queso Borrower has failed and/or refused to make the payments required thereunder or otherwise cure the Queso Defaults.

106.    As July 22, 2026, an amount not less than $18,318,768.44, consisting of principal in the amount of $18,073,388.09, unpaid accrued (non-default) interest in the amount of $170,145.80, unused line fee of $100.45, and late fees of $75,134.10, is owed under the Queso Loan Documents. Interest and attorneys' fees and expenses continue to accrue.

107. Plaintiff is also entitled to recover attorneys' fees and expenses incurred in connection with collection of the amounts owed under the Queso Loan Documents.

**COUNT II**
**APPOINTMENT OF RECEIVER – QUESO BORROWER**
**(Against Queso Borrower)**

108. The allegations contained in paragraphs 1 through 102 are incorporated by reference as if fully set forth herein.

109. This Court has the legal and equitable power to appoint a receiver.

110. Pursuant to Federal Rule of Civil Procedure 66, this Court is authorized to appoint a receiver over Queso Borrower and its businesses and assets.

111. The appointment of a receiver to take control of, manage and operate Queso Borrower and sell its assets is proper under the circumstances.

112. As a result of Queso Borrower's defaults under the Queso Loan Documents, Lender is entitled to the appointment of a receiver both under the express terms of the Queso Loan Documents and because equitable considerations weigh heavily in favor of such an appointment.

113. The Queso Defaults are ongoing and have not been cured.

114. Pursuant to Section 8 of the Queso Security Agreement, Queso Borrower agreed to and recognized Lender's right to the appointment of a receiver upon the occurrence of an Event of Default, with or without notice to Queso Borrower.

115. Because Queso Borrower consented to the appointment of a receiver following an Event of Default and because the Queso Defaults occurred and remain ongoing, Lender respectfully requests that the Court appoint a receiver over Queso Borrower.

116. In addition to Lender's contractual right to the appointment of a receiver, the appointment of a receiver is appropriate under the Court's equitable powers given Queso

24

Borrower's failure to cure the Queso Defaults, failure to pay obligations as and when due, including but not limited to sales taxes and franchise fees, and complete lack of transparency regarding Queso Borrower's financial condition.

117.    Additionally, Queso Borrower entered into the Workout Agreement requiring it to pay Qdoba Franchisor over $1 million of past due fees and sell all of its restaurants and did not notify Lender of the Workout Agreement or provide a copy until months later.

118.    Queso Borrower does not maintain its books and records in a sufficient form to be able to provide Lender with an accurate depictions of its financial status.

119.    Furthermore, Queso Borrower is putting the going concern value of the operations, and Lender's collateral, at risk by writing checks for payroll notwithstanding a lack of sufficient funds in Queso Borrower(s) bank accounts, and hoping that sufficient deposits are received before employees try to cash the checks.

120.    Even more, notwithstanding the appointment of a CRO, there are approximately $300,000 of unexplained transfers out of Queso Borrower(s) bank account.

121.    As described in Lender's accompanying motion, a receivership is necessary and desirable to preserve, manage and operate Queso Borrower's assets, protect against loss and to conduct an orderly sale of Queso Borrower's assets.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a) Against Queso Borrower, jointly and severally, for all amounts owed under the Queso Loan Documents, together with all interest accruing thereon through the date and entry of judgement;

(b) For entry of an order appointing a receiver to take possession and control of Queso Borrower and its businesses and assets and to manage, operate and sell the assets, pending the completion of this case or further order of this Court;

(c) For Plaintiff's attorneys' fees and expenses of litigation;

(d) For post-judgment interest as provided by law;

(e) For all costs of court; and

(f) For such other and further relief as this Court deems just and proper.

Dated: August 6, 2026

Respectfully submitted,

/s/ *James E. Van Horn*_____
James E. Van Horn
Pennsylvania Bar No. 88715
**Barnes & Thornburg LLP**
555 12th St NW, Suite 1200
Washington, DC 20004
Telephone: (202) 371-6531
JVanHorn@btlaw.com

Lisa Wolgast (pro hac forthcoming)
**Barnes & Thornburg LLP**
3340 Peachtree Road, N.E., Suite 2900
Atlanta, Georgia 30326-1092
Telephone: (470) 832-7535
Lisa.Wolgast@btlaw.com

*Attorneys for Bank Midwest, a division of NBH Bank*