**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BANK MIDWEST, a division of NBH Bank, <br><br>     Plaintiff, <br><br> v. <br><br> TIG QUESO LLC, QUESO TIME DE 1 LLC, QUESO TIME DE 2 LLC, QUESO TIME DE 3 LLC, QUESO TIME DE 4 LLC, QUESO TIME DE 5 LLC, QUESO TIME TPA1 LLC, QUESO TIME TPA2 LLC, QUESO TIME TPA3 LLC, QUESO TIME NJ 1 LLC, QUESO TIME NJ 10 LLC, QUESO TIME NJ 11 LLC, QUESO TIME NJ 12 LLC, QUESO TIME NJ 17 LLC, QUESO TIME NJ 2 LLC, QUESO TIME NJ 20 LLC, QUESO TIME NJ 3 LLC, QUESO TIME NJ 4 LLC, QUESO TIME NJ 5 LLC, QUESO TIME NJ 6 LLC, QUESO TIME NJ 9 LLC, QUESO TIME NJ 15 LLC, QUESO TIME NJ 18 LLC, QUESO TIME NJ 19 LLC, QUESO TIME NJ 21 LLC, QUESO TIME NJ 22 LLC, QUESO TIME NY 1 LLC, QUESO TIME NY 2 LLC, QUESO TIME NY 3 LLC, QUESO TIME NY 4 LLC, QUESO TIME PA 1 LLC, QUESO TIME PA 10 LLC, QUESO TIME PA 11 LLC, QUESO TIME PA 2 LLC, QUESO TIME PA 3 LLC, QUESO TIME PA 6 LLC, QUESO TIME PA 7 LLC, QUESO TIME PA 8 LLC, QUESO TIME PA 9 LLC, QUESO TIME PA 12 LLC, TIG QUESO NY LLC, TIG QUESO DE LLC, TIG QUESO NJ LLC, TIG QUESO PA LLC, and TIG QUESO FL LLC, <br><br>     Defendants. | Case No.  5:26-cv-05612-KNS |

<u>**CONSENT ORDER APPOINTING RECEIVER**</u>

Plaintiff Bank Midwest, a division of NBH Bank ("Plaintiff" or "Lender"), having filed

with this Court a Verified Complaint against Defendants TIG QUESO LLC, QUESO TIME DE 1

1

LLC, QUESO TIME DE 2 LLC, QUESO TIME DE 3 LLC, QUESO TIME DE 4 LLC, QUESO TIME DE 5 LLC, QUESO TIME TPA1 LLC, QUESO TIME TPA2 LLC, QUESO TIME TPA3 LLC, QUESO TIME NJ 1 LLC, QUESO TIME NJ 10 LLC, QUESO TIME NJ 11 LLC, QUESO TIME NJ 12 LLC, QUESO TIME NJ 17 LLC, QUESO TIME NJ 2 LLC, QUESO TIME NJ 20 LLC, QUESO TIME NJ 3 LLC, QUESO TIME NJ 4 LLC, QUESO TIME NJ 5 LLC, QUESO TIME NJ 6 LLC, QUESO TIME NJ 9 LLC, QUESO TIME NJ 15 LLC, QUESO TIME NJ 18 LLC, QUESO TIME NJ 19 LLC, QUESO TIME NJ 21 LLC, QUESO TIME NJ 22 LLC, QUESO TIME NY 1 LLC, QUESO TIME NY 2 LLC, QUESO TIME NY 3 LLC, QUESO TIME NY 4 LLC, QUESO TIME PA 1 LLC, QUESO TIME PA 10 LLC, QUESO TIME PA 11 LLC, QUESO TIME PA 2 LLC, QUESO TIME PA 3 LLC, QUESO TIME PA 6 LLC, QUESO TIME PA 7 LLC, QUESO TIME PA 8 LLC, QUESO TIME PA 9 LLC, QUESO TIME PA 12 LLC, TIG QUESO NY LLC, TIG QUESO DE LLC, TIG QUESO NJ LLC, TIG QUESO PA LLC, TIG QUESO FL LLC (collectively, "Queso Borrower" or "Defendants") and its Emergency Motion for Appointment of Receiver and Memorandum of Law in Support Thereof (the "Receiver Motion",[1] Doc. No. 4), seeking the appointment of a receiver, the Court having jurisdiction over Defendants and venue being proper in this Court; Plaintiff and Defendants having consented to the entry of this Order; Defendants having acknowledged service of the Complaint and Summons in this matter and due and proper service thereof; the Court having reviewed the entire record in this case, and finding good cause for the appointment of a receiver,

It is hereby ORDERED as follows:

1.      Defendants are subject to the jurisdiction and venue of this Court.

2.      Plaintiff is entitled to the appointment of a receiver.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed in the Receiver Motion.

3. **Appointment of Receiver.** GlassRatner Advisory & Capital Group, LLC, by and through Joseph V. Pegnia ("Receiver"), is appointed Receiver over Queso Borrower and all of its assets and business operations (the "Receivership Estate"). The Court finds that the Receiver possesses the necessary qualifications to act as receiver for the Receivership Estate.

4. **Bond and Oath.** The Receiver's appointment is effective upon the Receiver filing a bond with the Clerk of the Court in the amount of $10,000.00 and taking the oath required by law. The cost of the bond will be reimbursed to the Receiver by the Receivership Estate. The Receiver may at any time file a motion requesting that the bond be exonerated, or that it be discharged or released from its appointment as receiver, and all of its responsibilities attendant thereto.

5. **Powers and Duties.** The Receiver shall have exclusive possession and control over the Receivership Estate with the power and authority to take possession, preserve, protect, operate, manage, market, sell and transfer the Receivership Estate and/or any parts or portions thereof. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as the Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all laws and Local Rules of this Court governing federal receivers. The Receiver shall have other powers, rights and duties of receivers appointed under federal law including, without limitation, the following rights, powers and duties:

    a. **Collection of Proceeds.** The Receiver shall have the power to take all steps necessary to collect the proceeds from the Receivership Estate and deposit said sums into one or more accounts ("Bank Account") at a federally insured bank. The Receiver shall have the power to present for payment any checks, money orders, and other forms of payment made payable to any Defendant, which constitute or

are derived from the proceeds of the Receivership Estate, endorse same and collect the proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein. The Receiver shall have the sole and exclusive authority to disburse funds from the Bank Account. The Receiver shall have authority to take possession of bank and other deposit and brokerage accounts of Defendants, including such accounts that may not be in Defendants' name, or that may be in the name of one or more management companies, and to open, transfer and change all bank and trade accounts relating to the Receivership Estate, so that all such accounts are in the name of the Receiver.

b. **Possession of Receivership Estate.** The Receiver shall have the exclusive right to take and keep possession of the Receivership Estate, including, without limitation, all bank and brokerage accounts, security deposits, and deposit accounts during the pendency of the receivership and/or the above-captioned action. The Receiver is authorized to engage a locksmith or similar professional for the purposes of gaining access and taking possession of any asset of the Receivership Estate.

c. **Management of Receivership Estate.** The Receiver shall manage and operate the Receivership Estate on a daily basis in a manner consistent with this Order. The Receiver shall have the power and authority to enforce agreements and enter into new agreements and contracts relating to the Receivership Estate. The Receiver shall manage, operate and maintain the Receivership Estate subject to such rules and conditions as the Receiver may establish to ensure that Profits are profitably preserved and used, and to reasonably ensure that the value of the Receivership Estate is not materially diminished. The Receiver shall make the following daily

4

operating decisions regarding the Receivership Estate, including, without limitation:

    i. Hire outside advisors for the Receivership Estate to conduct the operations of the Receivership Estate as directed by Receiver, and terminating the employment of existing advisors, officers, or employees of the Receivership Estate, in its discretion;

    ii. Providing maintenance, repair, and improvement services for the Receivership Estate and extraordinary maintenance or repair services where deemed appropriate in connection with emergency conditions; provided, however, that the Receiver shall not contract for extraordinary maintenance or repair services costing $10,000 or more without Plaintiff's prior written consent or Court approval;

    iii. Terminating or continuing in effect in Receiver's business judgment any contracts or leases presently existing relating to the Receivership Estate;

    iv. Entering into or modifying contracts affecting any part or all of the Receivership Estate, including, without limitation, any leases affecting the Receivership Estate, so long as, for all contracts costing or having a value of more than $10,000 annually, or for any leases or contracts having a term of more than 30 days, the Receiver first obtains the written consent of the Court; and

    v. Procuring goods and services for the Receivership Estate.

d. **Sale or Liquidation**. The Receiver may, but is not required to, hire one or more brokers for the Receivership Estate as the Receiver deems appropriate to assist with

listing and marketing the Receivership Estate for sale. The Receiver may, but is not required to, retain an investment banker to assist in the sale of the Receivership Estate. The Receiver, with the written consent of Lender, may sell the Receivership Estate, in part or in whole, free and clear of liens, claims, encumbrances, and interests. Within two (2) business days of the consummation of a sale all or any part of the Receivership Estate, the Receiver shall file a notice of such sale with the Court.  Upon the sale of the Receivership Estate, in part or in whole, pursuant to the terms of this Order, the Receiver is authorized to satisfy the Receiver's fees and expenses from the proceeds of such sale.  Nothing herein shall subordinate or modify any existing liens or claims on the Receivership Estate.  Nothing herein shall waive the rights of any other creditor or third party to assets of the Receivership Estate or priority of payment.

e. **Payment of Expenses.** To the extent reasonably possible given the income generated by the Receivership Estate, the Receiver shall pay the current operating expenses of the Receivership Estate in the ordinary course of business; provided, however, that the Receiver shall not pay operating expenses or other payables relating to periods prior to Receiver's appointment as the Receiver other than trust funds for sales taxes in the accounts turned over to the Receiver, unless in Receiver's discretion, the same is necessary or desirable for the current and future operation and management of the Receivership Estate. The Receiver shall also disburse funds from the Bank Account to pay all amounts necessary to maintain adequate all risk hazard property damage and all risk comprehensive liability insurance on the Receivership Estate, to the extent necessary to ensure the

6

Receivership Estate is insured (nothing herein shall be deemed to absolve Defendants of their obligations under the Queso Loan Documents in place between Plaintiff and Defendants). Subject to the provisions of this Order, payment of payroll, payroll taxes, employee benefits, leasing company fees, property management company fees, as applicable, utilities, insurance, taxes, landscaping, janitorial services, and maintenance and other ordinary course expenses shall not require prior approval of the Court.

f.  **Accounting Records.** Defendants shall cause to be provided, on reasonable notice and during normal operating hours, and the Receiver shall expeditiously review and inspect the accounting records with respect to the Receivership Estate, and the Receiver shall take such steps as it deems necessary to assure that all Profits collected and all the disbursements made in connection with the Receivership Estate by the Receiver are properly accounted for in accordance with generally accepted accounting principles.  Defendants have advised Plaintiff that back office bookkeeping functions are maintained by third party contractors in India and the Defendants shall provide contact information person to the Receiver for the third party contractor.

g.  **No Obligation to Complete Tax Returns.** Notwithstanding any other provision hereof, the Receiver shall be under no obligation to complete or file tax returns on behalf of Defendants for income or other taxes. While acting as receiver, the Receiver shall comply with applicable laws and regulations relating to the collection of taxes. The Receiver shall allow Defendants such access to books and records within the Receiver's custody or control as may be necessary in order for

Defendants to complete and file tax returns on their own behalf. The Receiver shall be required to file all payroll and sales tax returns for the period of the Receivership.

h. **No Appraisal Required.** The Receiver is excused from seeking an independent professional appraisal of the Receivership Estate, but the Receiver is authorized to commission appraisals at the Receiver's discretion.

i. **Standard of Care.** The Receiver shall at all times exercise reasonable care in employing its business judgment to administer the Receivership Estate.

j. **Licenses and Permits.** The Receiver may acquire or renew all governmental licenses, permits, or other authorizations, including any liquor license, either in the Receiver's name or in the name of Defendants, pertaining to the Receivership Estate or any business associated therewith and do all other things necessary or appropriate to maintain and protect the Receivership Estate.

k. **Budget and Actual-to-Budget Comparison Reports**. The Receiver shall be permitted to use Advances (defined below) and proceeds only as set forth in and pursuant to a Budget (defined below) and this Order. All Advances and proceeds shall be deposited into the Bank Account as set forth above, which shall be disbursed by the Receiver pursuant to the express items in the Budget. Within ten (10) business days of entry of this Order, the Receiver shall prepare and submit to the parties a rolling thirteen (13) week cash flow budget (as updated as set forth herein, the "Budget") that sets forth all projected receipts together with a weekly forecast of other revenues and expenses and available cash. On a weekly basis, the Receiver shall prepare and submit to the parties (i) an updated rolling thirty (13) week cash flow budget and (ii) a comparison of the actual income and

8

disbursements for the immediately preceding calendar week against the projected revenues and expenses.

l. **Borrowing Authority.** The Receiver is authorized to borrow from Plaintiff such amounts as may be necessary to satisfy the costs and expenses of the receivership, to pay operating expenses and other expenses, to the extent that the net proceeds derived from the Receivership Estate are insufficient to satisfy such costs and expenses ("Advances"). All borrowings from Plaintiff shall be added to the principal as Advances under the Queso Loan Documents between Plaintiff and Defendants and shall be secured by the Queso Loan Documents with the same priority as Plaintiff's existing liens encumbering the Receivership Estate. The Advances shall be repaid by the Receiver to Plaintiff as collection of proceeds allow or from the proceeds of the sale of the assets of the Receivership Estate.

6. **Administration.** The Receiver is authorized to employ the following procedures and case administration:

a. **Bank Accounts.** The Receiver may establish the Bank Accounts described above.

b. **Financial Reports.** Commencing thirty (30) days after the appointment herein, and no later than the fifteenth (15th) day of each month thereafter, the Receiver shall file with the Court and serve on the parties a complete report on its activities and the condition of the Receivership Estate during the preceding calendar month, including a complete accounting of Proceeds collected and the disbursements made during the preceding calendar month (the "Report"). If the Receiver believes such Report would contain sensitive financial information, disclosure of which will negatively impact the Receivership Estate or the Receiver's ability to sell the

Receivership Estate, the Receiver may request, in compliance with Local Rule 5..1.5, to file the Report under seal.

c. **Fee.** The Receiver, including its staff professionals, shall be paid a reasonable customary fee for its work as receiver based upon its normal hourly rates, plus reasonable out-of-pocket expenses. The fees and costs of the Receiver and its professionals, including retained counsel, shall be paid from the gross receipts derived from the Receivership Estate. If the assets are not sufficient to pay the approved Receiver's fees as presented, Plaintiff may, and without obligation to do so, advance funds to the Receiver sufficient to pay such approved fees and costs, which funds shall constitute Advances under the Loan Documents.

d. **Court Approval; Procedure.** Any motion by the Receiver for Court approval or any act of the Receiver requiring Court approval shall be served on each party hereto and each other person who has filed and served on the Receiver a request for special notice. The Receiver may file requests for special notice on behalf of any party; however, such request filed by the Receiver shall not be deemed consent to the jurisdiction of this Court. In addition to service by mail or personal service, service may be made by facsimile or e-mail.

e. **Notice.** In addition to any special notice provisions contained herein, the Receiver shall provide notice of all pleadings filed by the Receiver herein to the parties hereto. Unless otherwise provided by the Rules of Civil Procedure, such notice may be made by mail or personal service five (5) days in advance of any hearing, by confirmed facsimile five (5) days in advance of any hearing, or as otherwise may

10

be approved by the Court. The Receiver shall be deemed to have been provided adequate notice if it complies with this section.

    f.   **Further Instructions.** The Receiver may at any time apply to this Court for further or other instructions or for modification of this Order or for further powers necessary to enable the Receiver to properly perform its duties, or for termination of the Receiver's appointment.

7.    **Other Parties' Obligations.** Defendants and their officers, directors, agents, representatives and employees, contractors, and subcontractors, including without limitation any property management firm, company or individuals retained by Defendants and their employees, including but not limited to TIG Management LLC, Manisha Patel and Jiger Patel, and all persons with actual or constructive knowledge of this Order and their agents and employees, shall turn over to the Receiver, within two (2) days after the date of entry of this Order:

    a.   Possession of the Receivership Estate, including all keys to all locks related to assets of the Receivership Estate, all bank accounts, deposit accounts, security deposits, codes, access codes, security codes, passwords, and the records, books of account, ledgers and all business records for the Receivership Estate (including, without limitation, the plans, specifications and drawings relating to or pertaining to any part or all of the Receivership Estate), wherever located and in whatever mode maintained (including, without limitation, information contained on computers and any and all software relating thereto as well as all banking records, statements, and cancelled checks), including but not limited to all of the foregoing in the possession of TIG Management LLC, Manisha Patel and/or Jiger Patel;

11

b.  All documents that constitute or pertain to licenses, permits or governmental approvals relating to the Receivership Estate;

c.  All documents that constitute or pertain to insurance policies, whether currently in effect or lapsed, that relate to the Receivership Estate;

d.  All leases and subleases, royalty agreements, licenses, assignments, franchise agreements or other agreements of any kind that are currently in effect and that relate to the Receivership Estate;

e.  All documents pertaining to past, present or future construction of any type with respect to all or part of the Receivership Estate;

f.  All documents pertaining to toxic chemicals or hazardous materials, if any, ever brought, used and/or remaining upon the collateral, including, without limitation, all reports, surveys, inspections, checklists, proposals, orders, citations, fines, warnings and notices;

g.  All proceeds derived from the Receivership Estate, including all funds in any bank accounts relating to the Defendants and/or the Receivership Estate (or turnover of control of such fees and expenses);

h.  All books, records, including payroll records and personnel files, and accounts relating to the Receivership Estate, and all other records, documents, insurance policies and instruments of whatever kind and nature which relate to the operation, management and/or control of any part of the Receivership Estate;

i.  All financial institutions, credit card processors, insurance agents or underwriters, utility providers, vendors, suppliers, tradesmen, materialmen, service providers, franchisors, taxing agencies, and all government agencies and departments are

hereby ordered to take direction from the Receiver as it relates to the accounts of Defendants and to surrender any and all funds held on deposit or apply said funds as directed by the Receiver; and

j.  All documents pertaining to the sale of any of Defendants' restaurants, assets, sites under development, leases and/or other property, including without limitation, letters of intent, asset purchase agreements (including drafts), and communications regarding the foregoing.

8.  **Utilities.** Any utility company providing services to the Receivership Estate, including gas, electricity, water, sewer, trash collection, telephone, communications or similar services, shall be prohibited from discontinuing service to the Receivership Estate based upon unpaid bills incurred by Defendants. Further, such utilities shall transfer any deposits held by the utility to the exclusive control of the Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services.

9.  **Mail.** The Receiver may issue demand upon the U. S. Postal Service that the U.S. Postal Service grant exclusive possession and control of mail, including postal boxes, as may have been used by Defendants and may direct that certain mail related to the Receivership Estate and its business be re-directed to the Receiver.

10.  **Insurance.** The Receiver shall determine upon taking possession of the Receivership Estate whether in the Receiver's judgment, there is sufficient insurance coverage. With respect to any insurance coverage in existence or obtained, the Receiver and the property management company, if one exists, shall be named as additional insureds on the policies for the period of the Receivership. If sufficient insurance coverage does not exist, the Receiver shall immediately notify the Court and shall have thirty (30) calendar days to procure sufficient all-risk

13

and liability insurance on the Receivership Estate (excluding earthquake and flood insurance) provided, however, that if the Receiver does not have sufficient funds to do so, the Receiver may seek an Advance from Plaintiff and increase the coverage. The Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance. Defendants and their property managers, members, managers, officers, owners, directors, employees, agents, affiliates and insurer are prohibited from cancelling, reducing, or modifying any and all insurance coverage in existence with respect to the Receivership Estate that are in effect as of the date of this Order without the consent of Receiver.

11.    **Use of Funds.** The Receiver shall pay only those bills that are reasonable and necessary for the operation or the protection of the Receivership Estate, according to the Budget, and shall allocate funds in the following order of priority: (1) the costs and expense of the Receivership Estate including utilities, payroll, food, sales tax, rent (including rent on subleases and rent under subleases between Qdoba Franchisor LLC ("QFL") and any Defendant), operating expenses, insurance premiums, general and special taxes or assessments levied on the real property and improvements thereon, receivership fees, professional fees, attorneys' fees, etc.; (2) the creation and retention by the Receiver of a reasonable working capital fund, according to the Budget; and (3) amounts due to Plaintiff.

12.    **General Provisions**

    a.    **Civil Claims**. No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an Order of this Court permitting a suit or action to proceed; provided, however, that no prior Court Order is required to file a motion in this action to enforce the provisions of this Order or any other Order of this Court in this action.

b. **No Personal Obligation of Receiver.** No obligation incurred by the Receiver in the good faith performance of its duties in accordance with the orders of this Court, whether pursuant to any contract, by reason of any tort, or otherwise, shall be Receiver's obligation or the personal obligation of its principals or agents. Rather, the recourse of any person or entity to whom the Receiver becomes obligated in connection with the performance of its duties and responsibilities shall be solely against the Receivership Estate. The Receiver shall have no obligation to advance its own funds to any costs and expenses of the Receivership Estate and the Receiver shall not be liable for any Receivership Estate or receivership obligations. The Receiver is authorized to use Defendants' taxpayer identification numbers to establish and open bank accounts, issue financial reports, open, administer or close accounts with vendors or utilities suppliers, with respect to marketing or sale of the Receivership Estate or any loans relating thereto, and for other accounting and financial related purposes. The Receivership Estate shall indemnify and hold harmless the Receiver and its principals and agents from any claims against the Receiver which arise out of the Receiver's operation of this Receivership in a manner consistent with and within the scope of this Order, unless the Receiver has committed fraud and gross negligence in the administration of its duties. The Receiver and its principal and agents shall not be liable for any action or omission of Plaintiff or any Defendant.

13. **No Lender Liability and No Limit on Lender Remedies**. Plaintiff and its present and former officers, directors, shareholders, employees and agents, subsidiaries, and their heirs, personal representatives, successors and assigns shall not be liable for: (i) any action or omission

15

of the Receiver, or (ii) defects, deficiencies, flaws, expenses, costs or other matters relating to the Receivership Estate. Nothing in this Order shall be deemed to limit or prohibit Plaintiff from initiating and/or completing a uniform commercial code sale or other disposition of the Receivership Estate or from negotiating and completing an acceptance of any collateral.  Nothing herein shall release any claim of the Borrower or Guarantor against any other person or party.

14.     **Non-Interference with Receiver.** All persons and entities with actual knowledge of this Order, including, without limitation, the parties to this action, and the officers, directors, members, managers, owners, principals, affiliates, agents, servants and employees (current or former) of Defendants, including but not limited to TIG Management LLC, Manisha Patel and Jiger Patel, are enjoined from:

   a. Interfering with the Receiver, directly or indirectly, in the management and operation of the Receivership Estate or business operations of Defendants;

   b. Interfering with the Receiver, directly or indirectly, in the collection of revenues derived from the Receivership Estate or the business operations of Defendants;

   c. Collecting or attempting to collect from the Receivership Estate or Defendants;

   d. Extending, dispersing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Receivership Estate without the prior written consent of the Receiver and this Court;

   e. Terminating any agreement with Defendants without prior Court approval; and

   f. Any act which directly or indirectly interferes in any manner with the discharge of the Receiver's duties under this Order and the operation and management of the Receivership Estate or Defendants' business.

15.    **Qdoba Franchisor LLC.**  Nothing in this Order grants the Receiver, Plaintiff, or any other person any right, title, license, or interest in the trademarks, service marks, trade dress, system, or proprietary information of QFL, which may be granted only by separate written agreement with QFL.  QFL and the Receiver shall use good faith efforts to enter into such an agreement governing the Receiver's interim operation of the Restaurants promptly following entry of this Order. Paragraph 14 of this Order shall not apply to QFL, and nothing in this Order limits QFL's rights and remedies under the Franchise Agreements between QFL and any Defendant, the Development Agreement between QFL and Defendants, the Workout Letter dated March 11, 2026 between QFL and Defendants, or any sublease between QFL and any Defendant, including rights of termination and possession; provided, however, that so long as the Receiver remains current on rent under the subleases between QFL and any Defendant, QFL shall not exercise termination or possessory remedies as to any Restaurant operated by the Receiver, and QFL shall not require the Receiver to pay royalty or National Marketing Fund fees accruing after entry of this Order through the closing of the sales of the Restaurants or November 1, 2026, whichever is earlier. Royalty and National Marketing Fund fees shall continue to accrue in accordance with the Franchise Agreements and shall remain due and owing by the Defendants and by the guarantor under Paragraph I of the Workout Letter, and nothing in this Order or in QFL's forbearance constitutes a waiver, release, cure, discharge, or modification of those amounts, of any amounts accrued prior to entry of this Order, or of any other obligation of any Defendant, guarantor, or other person to QFL.  Nothing herein shall be considered the agreement of the Jiger Patel or Manisha Patel under any agreement with QFL that any amounts incurred by the Receiver are chargeable to or the responsibility of Jiger Patel or Manisha Patel.

16.    **Termination of CRO.**   Effective as of the date of entry of this Order, Wen Rittsteuer is terminated as the Chief Restructuring Officer of Defendants and all of her powers, rights and obligations as Chief Restructuring Officer are terminated.  Within two (2) days of entry of this Order, Ms. Rittsteuer shall turn over to the Receiver all books, records, files, and other documents of whatever kind and nature which relate to the operation, management and/or control of any part of the Receivership Estate, including without limitation, all cash flow forecasts, budgets, flow of funds and all analysis, forecasts and budgets prepared by Ms. Rittsteuer or members of her team, together with native versions (including without limitation, Excel files).

17.    **Termination.** The Receiver or Plaintiff may request the Receivership be terminated upon the full payoff of Plaintiff's Indebtedness secured by the Loan Documents, upon the completion of a foreclosure of the Receivership Estate, or upon the acquisition of the Receivership Estate by Plaintiff or any assignee in satisfaction of the indebtedness, or if the Receivership is otherwise no longer necessary. Upon termination of the Receivership, the Receiver shall relinquish possession and control of the Receivership Estate to the appropriate party. Upon relinquishing possession and control of the Receivership Estate, the Receiver shall be relieved from all further duties, liabilities and responsibilities relating to the Receivership Estate and shall thereafter submit the Receiver's final account and report for Court approval and discharge.

18.    **Retention of Jurisdiction.**   Except as otherwise provided herein, this action and the preliminary injunction herein shall continue until further Order of this Court.  This Court retains jurisdiction to modify the terms of this Order and to expand or contract the rights, duties and obligations of the Receiver, and to enter such other orders as may from time to time, during the pendency of this action, be deemed necessary, just and proper.  The provisions of this Order shall survive entry of, and shall govern with respect to any conflict with any subsequent order of the

Court, irrespective of whether this case is stayed, dismissed or transferred.  The Receiver or Plaintiff may petition the Court on an expedited basis for further specific description of the Receiver's powers and duties and further powers necessary to enable the Receiver to properly fulfill its duties after providing notice to all parties who have appeared in this action.

19.   **Conditional Release; Guarantor Stay.**

a.   Provided that (i) Defendant, Jiger Patel and Manisha Patel and no person or entity acting in concert with or at the direction of any Defendant, Jiger Patel and/or Manisha Patel takes any action of any kind or nature whatsoever, directly or indirectly, to impede, oppose or otherwise interfere in any manner with the Receiver's powers and rights under this Order, (ii) Defendants, Jiger Patel and Manisha Patel reasonably cooperate with the Receiver to effectuate a turnover of the Receivership Estate to the Receiver and timely provide the documents, information and deliverables to be provided to the Receiver hereunder, and (iii) Defendants, Jiger Patel and Manisha Patel cause the services of TIG Management LLC to be available to the Receiver in the same manner as previously used by or available to or for the benefit of Defendants and their assets prior to entry of this Order, Plaintiff agrees, as evidenced by the signature of its counsel set forth below, that Plaintiff shall not seek to collect amounts owed by Manisha Patel to Plaintiff under that certain Guaranty dated April 14, 2025 guarantying amounts owed by Defendants to Plaintiff from Manisha Patel's residence located at 400 Foxcroft Drive, Ivyland, Pennsylvania.  Nothing in this Paragraph 19(a) shall require TIG Management LLC to incur expense on account of TIG Management LLC providing

19

services to the Receiver hereunder, except to the extent that the Receiver agrees to reimburse TIG Management LLC for its reasonable expenses actually incurred.

b.  Within one (1) business day of entry of this Order, Plaintiff agrees, as evidenced by the signature of its counsel set forth below, to file a motion with the Court seeking entry of an order staying Civil Action File No. 2:26-cv-05215-JP pending in this Court through the earlier of (x) a sale of all of substantially all of Defendants' restaurants or (y) November 5, 2026.

[SIGNATURES ON FOLLOWING PAGE]

**CONSENTED TO AND AGREED BY:**

/s/ *James E. Van Horn*_____
James E. Van Horn
Pennsylvania Bar No. 88715
**Barnes & Thornburg LLP**
555 12th St NW, Suite 1200
Washington, DC 20004
Telephone: (202) 371-6531
JVanHorn@btlaw.com

Lisa Wolgast (pro hac forthcoming)
**Barnes & Thornburg LLP**
3340 Peachtree Road, N.E., Suite 2900
Atlanta, Georgia 30326-1092
Telephone: (470) 832-7535
Lisa.Wolgast@btlaw.com

*Attorneys for Bank Midwest, a*
*division of NBH Bank*

/s/ *Albert A. Ciardi III*
Albert A. Ciardi III
Pennsylvania Bar No. 63598
**Ciardi Ciardi & Austin**
1905 Spruce Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 599-2018
Aciardi@ciardilaw.com
*Attorneys for Defendants*